YOE v. HANVEY.

Upon the petition of the widow of an intestate, a tract of land belonging to the intestate's estate was assigned to her as a homestead in 1879. She had no children of her own, but there were children of the intes-

tate by a former marriage. These children being all of age, and none of them residing with the widow on this homestead, two of them instituted this action against the others and the widow for partition. *Held,* that the widow was entitled to retain this homestead during life, and that therefore the complaint was properly dismissed.

Mr. Chief Justice Simpson concurred in the result, and Mr. Justice McIver dissented.

Before COTHRAN, J., Abbeville, June, 1885.

The opinion states the case.

*Mr. Samuel C. Cason,* for appellant.

*Mr. M. P. DeBruhl,* contra.

May 12, 1886.   The opinion of the court was delivered by

Mr. Justice McGowan.   Edward Hanvey died intestate in 1877, leaving a widow, Sarah J. Hanvey, and the plaintiffs and other defendants, his children, who, with the widow, were his heirs at law.   Sarah J. was a second wife and had no children of her own.   The intestate was indebted and was seized and possessed of very little personal property and a small tract of land containing 150 acres and valued at $500.   Soon after the death of the intestate, the widow, Sarah J., filed her petition for homestead, and on January 31, 1879, the entire tract of 150 acres, set down at the value of $500, was assigned to her as homestead, after publication of notice in the county paper as required by law. No other notice was given.   All of the children of Edward Hanvey are of age, and none of them live with Sarah J. Hanvey. The probate judge, in the settlement of the estate of Edward Hanvey, stated that "various claims were presented, but this sum (namely, $126.48, which constitutes the personal estate) is to be divided among the medical accounts for last illness and funeral expenses."   Those claims amounted to $214.

Two of the children of Edward Hanvey by his first wife, instituted this proceeding against the widow, Sarah J., for partition of the little tract of land which had been assigned to her as homestead.   They claimed that as heirs at law of Edward Hanvey,

deceased, they were entitled to have partition of the same. The cause, by consent, was heard by Judge Cothran at chambers, who held, "That to partition the land now among the children of the intestate, Hanvey, would entirely deprive the widow of all interest in it (as the act allowing partition of homestead is limited expressly to 'the children of the head of the family'). The time for partition has not come. It is therefore ordered and decreed that the complaint be dismissed," &c.

From this decree the children of Edward Hanvey appeal to this court, on the ground, "That his honor erred in holding that the land described in the complaint was not now subject to partition among the parties to this suit, but that the said Sarah J. Hanvey had the right to hold the same as a homestead against the other heirs during her life."

Appellants' counsel is perfectly correct in saying that there has been some want of clearness and consistency in relation to the multitudinous points, arising in different forms out of the question of homestead. It is comparatively a new subject, as to which the laws, not always consistent with each other or the constitution, have been frequently changed; and the right itself, being in its nature somewhat peculiar, is, in some of its aspects, not at all free from difficulty. This is shown by the fact that the provisions of law in the different States, and the decisions of the different courts upon the subject, are not at all in accord. We may, however, take it as settled in this State, that homestead creates no new estate; that neither the constitution nor the laws in conformity to it, undertake to do the impossible thing, of taking property from one and giving it to another. On the contrary, homestead is not, and cannot be, anything more than an exemption, under certain circumstances, of specified property from sale by creditors, for a particular purpose of policy and humanity. The facts of this case do not require us to consider whether the exemption from creditors allowed, is, or was intended to be, temporary merely—lasting only, like dower, as long as the particular state of facts exist which called it into existence; or is unlimited and permanent in its nature, authorizing an absolute sale or partition in fee of the property so exempted. See *Chalmers* v. *Turnipseed*, 21 *S. C.*, 138.

In the case at bar the homestead was not assigned to the debtor, Edward Hanvey, in his life time, thereby giving rise, after his death, to questions between the widow and children under the assignment to the husband and father. But after his death it was assigned to his widow, Sarah J., in 1879. This was before the late amendment of the constitution in relation to homestead (1880), and therefore the assignment must have been made under section 4 of the act of 1873, 15 *Stat.*, 371. But that section was re-enacted *verbatim*, in the General Statutes of 1882, section 1997, which is as follows: "If the husband be dead, the widow and children, if the father and mother be dead, the children living on the homestead, whether any or all of such children be minors or not, shall be entitled to have the family homestead exempted in like manner as if the husband or parents were living; and the homestead so exempted shall be subject to partition among all the children of the head of the family in like manner as if no debts existed: provided, that no partition or sale in that case shall be made until the youngest child becomes of age, unless, upon proof satisfactory to the court hearing the case, such sale is deemed best for the interest of such minor or minors," &c.

Although the assignment of homestead under this act to Mrs. Hanvey exempted the premises from the debts of her deceased husband, Edward Hanvey, it was, to all intents and purposes the homestead of the widow, Sarah J., as the then head of the family, whether any of her step-children did or did not live with her, or indeed, whether she or her husband ever had any children. *Bradley* v. *Rodelsperger*, 3 *S. C.*, 227, and 17 *Id.*, 9; *Moore* v. *Parker*, 13 *Id.*, 486. If Edward Hanvey had left no widow, it may well be doubted whether his children, none of whom were minors, or "living on the homestead," could have claimed the exemption in his lands against his debts. At all events, the widow alone applied and the homestead was set off to her as the head of the family, taking the place of her husband. But for the interposition and establishment of her claim, the creditors probably would have sold the land for their debts; and it seems to us that it would really be a strange result, if the homestead, which could only be exempted in favor of the widow,

could after exemption be destroyed by others through a sale or partition of it.

We agree with the Circuit Judge that the adult children of Edward Hanvey have no right to partition at this time the land assigned as homestead to the widow; that the widow is entitled to enjoy.it like dower during her life and at her death a new question may possibly arise, as to whether it then goes to the unpaid creditors of Edward Hanvey, or may be partitioned among his heirs, as to which we give no opinion.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.

Mr. Chief Justice Simpson concurred in the result.

Mr. Justice McIver, *dissenting.* I am unable to concur in the conclusion reached by the majority of the court, because it appears to me to be in conflict with the principles upon which at least three of the former decisions of this court rest, viz., *Elliott* v. *Mackorell*, 19 *S. C.*, 242; *Ex parte Ray*, 20 *Id.*, 246; and *Chalmers* v. *Turnipseed*, 21 *Id.*, 136; and not in accordance with the proper construction of the homestead law. The intestate having died in 1877, the rights of his heirs then vested, and the question involved in this case must be determined by the law then of force. It is conceded that the 4th section of the act of 1873 (15 *Stat.*, 371) furnishes us with the law, and it reads as follows: "If the husband be dead, the widow and children, if the father and mother be dead, the children living on the homestead, whether any or all such children be minors or not, shall be entitled to have the family homestead exempted in like manner as if the husband or parents were living; and the homestead so exempted shall be subject to partition among all the children of the head of the family in like manner as if no debts existed: provided, that no partition or sale in that case shall be made until the youngest child becomes of age, unless, upon proof satisfactory to the court hearing the case, such sale is deemed best for the interests of such minor or minors."

Now, it will be observed that this section contains no restriction upon the general right to partition except in the single instance of there being minor children interested, and then the right to

have partition made is only postponed "until the youngest child becomes of age." But as there are no minor children in this case, I can find nothing in the law which in any way interferes with or postpones the ordinary right which the heirs of the intestate have to demand partition of his real estate. It having been determined in the cases above cited, that the homestead laws do not create any new estate, and certainly do not undertake to divest any previous estate, and that they were not designed "to alter or in any way affect the statute for the distribution of intestates' estates," it seems to me to follow necessarily that when Edward Hanvey died intestate, the title to his real estate immediately descended to and vested in his heirs at law, charged only with a liability for the payment of his debts; and that when relieved of this charge, as it has been by the homestead law, it became subject to partition just as if there had been no debts, there being, as we have seen, no provision in the homestead law which would defeat, or even postpone, this right to partition.

It does not seem to me that the mere fact that the widow, and the widow only, could invoke the protection afforded by the homestead laws, should affect the question in this case. The only obstacle to the right of the heirs to demand partition being the liability of the land to be subjected to the payment of the debts of their ancestor, whenever that obstacle was removed, no matter by whose agency, the real estate of the intestate became at once subject to partition amongst his heirs at law, of whom the widow was one, under the provisions of the act of 1791, in the absence of any legislation modifying or postponing such right to partition. The homestead laws operate simply as a shield to protect the exempted property from the grasp of creditors, leaving the title to such property, with all its incidents, just where it was before such shield was interposed.

It seems to me, therefore, that until the legislature sees fit to modify or postpone the right of partition secured to the heirs of an intestate under the laws, as I understand them now to be written, the right to demand partition of real estate exempted from the payment of debts under the homestead law cannot be denied.

Judgment affirmed.